FILED
2016 Dec-15  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRANDI CURRY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | |
| **KOCH FOODS, INC., and ALEX** | ) | **JURY DEMAND** |
| **HUDDLESTON,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |

# COMPLAINT

## I.   INTRODUCTION

1.   Through this complaint, Brandi Curry, ("Plaintiff") asserts federal claims of sexual harassment and sex discrimination and retaliation in violation of Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981, and 42 U.S.C. Section 1981a ("Title VII") against Defendant Koch Foods, Inc. Through supplemental jurisdiction, this Court's jurisdiction extends over the related state law claims brought against Defendant Koch Foods, Inc. of invasion of privacy, assault, and negligent and/or wanton

1

training, supervision, and/or retention because all such claims arise from a "common nucleus of operative fact." Also, Plaintiff brings claims of invasion of privacy and assault against Alex Huddleston, an individual.

## II.   JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Venue is proper in the Northern District of Alabama under 28 U.S.C. §1391(b), and the Southern  Division pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f).

3.   Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff timely filed her charge of discrimination on February 29, 2016, which was within 180 days of the occurrence of the last discriminatory act.  Plaintiff timely filed her lawsuit within 90 days of the receipt of her Right-To-Sue Letter from the Equal Employment Opportunity Commission, which was issued on September 26, 2016.

## III.   PARTIES

4.   Plaintiff is an African American woman who is over (19) years old, is a citizen of the United States, is a resident of the State of Alabama and was employed in the State of Alabama by  Defendant. Plaintiff is an employee as defined under Title VII.

5.      Defendant  Koch Foods, ("Defendant company" or "Koch Foods") is an entity

        subject to suit under Title VII and employs at least fifteen (15) persons.

6.      Defendant Alex Huddleston, is an employee of the United States Department

        of Agriculture ("USDA").

## III.    FACTUAL ALLEGATIONS

7.      Koch Foods is one of the largest poultry processors in the United States, with

        locations in Alabama, Georgia, Illinois, Mississippi, Ohio and Tennessee.

8.      Plaintiff began working at the Koch Foods plant in Ashland, Alabama on

        September 4, 2014 as a general laborer in production, and she held that job title

        for about sixty (60) days until she was trained to perform "Draw and Trim" in

        the Evisceration Department and moved to that position.

9.      Plaintiff worked beside USDA inspectors who are Food Safety and Inspection

        Service program employees. These inspectors are assigned by the USDA to

        inspect each chicken to make sure it meets USDA standards before that

        chicken is processed in the plant.

10.     The USDA inspectors stand beside trimmer employees like Plaintiff on a stand

        over the line where the chickens pass, and the inspector directs the trimmer to

        remove certain defective birds from the production line or trim off bad parts of

        those birds.

3

11.  One USDA inspector who occasionally directed Plaintiff's work was a white man named Alex Huddleston.

12.  Plaintiff's shift ran from 8:45 p.m. to 5:45 a.m., and Huddleston's shift started at 5:45 a.m. when Plaintiff was getting off work.

13.  However, Huddleston regularly arrived at work half an hour early at 5:15 a.m. in order to earn overtime, and that is when he worked with Plaintiff instructing her to trim or pull certain birds off the production line.

14.  Soon after Huddleston started working with Plaintiff in November 2015, Huddleston began making lewd graphic sexual comments to Plaintiff on a constant and continuous basis.

15.  Plaintiff made it clear to Huddleston on numerous occasions that his sexual comments were not welcome; however, Huddleston continued to sexually harass Plaintiff.

16.  Plaintiff reported the sexual harassment to her supervisor Carolyn Richardson and Richardson reported the sexual harassment to her supervisor, Second Shift Manager, Jeff Hawkins.  After learning of Plaintiff's complaint of sexual harassment, Mgr. Hawkins asked Plaintiff to give him a few days to look into the situation.

17.  Defendant claims in its position statement to the EEOC that it cannot take

action against a USDA employee, such as Huddleston, despite the fact that he is sexually harassing one of Koch Foods employees.  Koch Foods stated to the EEOC that all Koch can do is report the complaint to USDA for investigation.

18.   However, this is false, as Koch has the authority to take remedial action to prevent and correct harassment in its own facility.

19.   After Plaintiff's initial report, Huddleson's harassment continued, and in an attempt to stop the harassment, Plaintiff reported the harassment to a USDA employee, Dr. Baldwin, who was the USDA veterinarian working at the plant.

20.   According to Defendant company's position statement to the EEOC, on December 1, 2015, Dr. Baldwin relayed Plaintiff's complaint to Mgr. Hawkins, (who was already aware of Plaintiff's sexual harassment complaint) and Hawkins took a written statement from Plaintiff.

21.   In Plaintiff's written statement she provided some details about the sexual harassment.  In particular, Plaintiff wrote in her statement that Baldwin was "trying to get in my pants," told Plaintiff about how he likes to "eat pussy" because he has medical problems, asked to go to bed with Plaintiff, told Plaintiff she was a beautiful lady and he just wanted to bite her lip, and other lewd comments.  Plaintiff further stated how uncomfortable she was working with Huddleston.

22.     Shortly after Plaintiff made this written report to Mgr. Hawkins, in early December 2015 Huddleston threatened Plaintiff by telling her "I'm going to shove my dick so far up you it is going to come out your throat."

23.     Plaintiff reported this latest sexual harassing threat to Mgr. Hawkins and to Human Resources Manager Lisa Wright.

24.     On December 9, 2015 HR Complex Manager Randy Cisne sent a memo to HR Manager Bobby Elrod stating that he had learned from an email dated December 7, 2015 sent by Mgr. Hawkins stating that on Tuesday, December 1, 2015 Plaintiff had said she wanted to file a sexual harassment complaint against USDA Inspector Huddleston.

25.     HR Manager Wright interviewed Plaintiff and asked why she had said in her written statement that USDA Inspector was "trying to get in [her] pants." Plaintiff responded as follows: "[h]e asked if he could eat me out and do my private area have an odor because his wife's do and he can't stand to smell her."

26.     HR Manager's December 9, 2015 memo contained a summary and a recommendation section wherein it stated that Plaintiff should be re-educated on the Sexual Harassment Policy, briefed on retaliation and reporting procedures, and she should be monitored to ensure no retaliation.  HR also

recommended giving USDA a copy of their findings.

27.    After December 9, 2016, Huddleston continued to bother Plaintiff on the job and told Plaintiff "monkeys don't stop my show" which Plaintiff took to be a racial slur directed at her. She reported that racist comment to Defendant company. Plaintiff also learned that Huddleston had referred to other African Americans as "nigger."

28.    Plaintiff continued to work for Defendant company but her job became increasingly difficult as she was isolated and other USDA inspectors refused to work with her.

29.    On February 29, 2016 Plaintiff filed an EEOC Charge against Defendant company. After Defendant company received the EEOC Charge, Defendant company interviewed another Koch Foods employee who said that USDA Inspector Huddleston had made sexual gestures and comments to her. The other employee further stated that she had previously reported Huddleston's sexual harassment to Defendant company's Human Resources department. The other employee's report occurred before Plaintiff reported Huddleston's sexual harassment of her.

30.    According to a memo Defendant company provided to the EEOC, on March 23, 2016. Defendant company interviewed Plaintiff and Plaintiff reported how

USDA Inspector Huddleston said he was not worried about her claim because nothing would come of it. Plaintiff further reported that Huddleston had told her that one monkey don't stop no show, and that he had been back on her stand at work as if nothing happened. The memo further states that Plaintiff felt that her complaint was not being taken seriously, and that she was being disrespected.

31. In its EEOC position statement, Defendant company wrote that on May 23, 2016 Huddleston returned to work at the Ashland plant, indicating he must have been removed from the plant for a short period of time.

32. When Huddleston returned to the plant after May 23, 2016, the environment became so harsh that Plaintiff was compelled to resign her job on June 6, 2016, as would any reasonable person.

33. Defendant company acted with malice and/or with reckless indifference to Plaintiff's federally protected rights when it failed to take appropriate preventative or corrective action resulting in her constructive discharge.

## IV.   CAUSES OF ACTION

### A.   COUNT I – SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

34. Plaintiff re-alleges and incorporates by reference paragraphs 1-33 above with

the same force and effect as if fully set out in specific detail below.

35. This claim is only brought against Defendant company.

36. Defendant company subjected Plaintiff to a sexually hostile work environment that was sufficiently severe or pervasive enough to alter the terms and conditions of her employment.

37. The hostile work environment was objectively and subjectively hostile and abusive because a reasonable person would find the work environment endured by Plaintiff to be hostile and abusive, and the harassment negatively impacted Plaintiff's employment.

38. Plaintiff subjectively perceived the sexually and gender harassing treatment described above to be hostile and abusive, and such conduct actually negatively impacted the conditions of her employment.

39. Defendant company failed to guard against the misconduct of third parties on its premises, failed to train its supervisors and employees, and failed to take adequate remedial action.

40. Defendant company had no adequate sexual harassment policies and procedures for handling complaints of sexual harassment from third parties such as Defendant Huddleston, and if Defendant company had a policy it failed to distribute it or enforce it.

41.   Defendant company has been aware of this hostile and abusive environment created by Huddleston through Plaintiff's complaints and through complaints of other employees prior to Plaintiff, and despite this knowledge Defendant continuously refused to take appropriate remedial action.

42.   Defendant company ratified and/or condoned such hostile and abusive behavior by failing to take appropriate action and allowing the sexual harassment to continue after Plaintiff made her report.

43.   Defendant company is directly and indirectly liable for the conduct of third parties on its premises that amounted to the sexual harassment suffered by Plaintiff.

44.   The sexually harassing conduct towards Plaintiff, and Defendant company's ratification of such conduct, adversely affected Plaintiff's job because the conduct unreasonably interfered with Plaintiff's employment to such an extent that it made it more difficult for Plaintiff to do her job and eventually impossible for her to remain safely on her job.

45.   Defendant company, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

46.   Plaintiff has no plain, adequate or complete remedy at law to redress the

wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

47.   Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendant company's unlawful conduct as set forth herein unless enjoined by this Court.

**B.   COUNT II  – RETALIATION IN VIOLATION OF TITLE VII and SECTION 1981**

48.   Plaintiff re-alleges and incorporates by reference paragraphs 1-47 above with the same force and effect as if fully set out in specific detail herein below.

49.   This claim is only brought against Defendant company.

50.   Plaintiff complained to management and human resources that she was being sexually harassed and that she was called a racial slur.

51.   In response to Plaintiff's opposition to sexual discrimination and racial harassment, Defendant company retaliated against Plaintiff by moving her, subjecting her to harsh treatment and ultimately constructively discharging her.

52.   There is a causal relationship between Plaintiff's engagement in protected activity and the materially adverse employment actions taken against her by Defendant company.

11

53.   Said retaliation was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

54.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

55.   Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant company's unlawful conduct as set forth herein unless enjoined by this Court.

## C.   COUNT III – INVASION OF PRIVACY

56.   Plaintiff re-alleges and incorporates by reference paragraphs 1-55 above with the same force and effect as if fully set out in specific detail herein below.

57.   This claim is brought against both Defendants.

58.   Defendant Huddleston invaded Plaintiff's privacy by intruding upon Plaintiff's physical solitude or seclusion, by making statements or inquiries invasive of her privacy.

59.   Defendant company ratified the invasion of the privacy of Plaintiff that a third party committed when he intruded upon Plaintiff's physical solitude or seclusion, by making statements or inquiries invasive of her privacy.

60.   Defendants engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's rights.

### D.   COUNT IV - NEGLIGENCE

61.   Plaintiff re-alleges and incorporates by reference paragraphs 1-60 above with the same force and effect as if fully set out in specific detail herein below.

62.   This claim is brought only against Defendant company.

63.   This is a claim arising under the law of the State of Alabama to redress Defendant company's negligence in allowing Plaintiff to be sexually harassed by the inspector who sexually harassed Plaintiff.

64.   Defendant company had a duty to prevent and correct sexually harassment on its premises by third parties. However, Defendant company breached this duty when it failed to take remedial action after it learned that Huddleston was sexually harassing females on its premises. Defendant company's negligence proximately caused injuries to Plaintiff as a result of the sexual harassment detailed above.

### F.   COUNT V – ASSAULT

65.   Plaintiff re-alleges and incorporates by reference paragraphs 1-64 above with the same force and effect as if fully set out in specific detail below.

66.   This claim is brought against both Defendants.

67.   Defendant Huddleston assaulted Plaintiff by threatening her with physical harm.

68.   Defendant company's agent or third party assigned to work with Plaintiff assaulted Plaintiff by threatening her with physical harm.

69.   Defendant company authorized, ratified and/or condoned its agent's actions which amounted to an assault of Plaintiff.

70.   Defendants engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's rights.

## V.    DAMAGES

71.   Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

72.   Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of Defendants' unlawful conduct.

73.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, compensatory, and punitive damages is her only means of securing adequate relief.

14

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully pray that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of  company are violative of the rights of Plaintiff as secured by Title VII.

2.    Grant Plaintiff a permanent injunction enjoining Defendant company, its agents, successors, employees, attorneys and those acting in concert with Defendant company and at Defendant company's request from continuing to violate Title VII.

3.    Enter an Order requiring Defendant company to make Plaintiff whole by awarding her reinstatement in the position and salary level she would have occupied absent sexual harassment and backpay (plus interest) in an environment free of sexual harassment, award her front pay if reinstatement as described above is not possible, lost wages (plus interest), compensatory damages, punitive damages, post judgment interest, loss of benefits including retirement, pension, seniority and other benefits of employment.

4.    Enter an award requiring individual Defendant Huddleston to award

15

Plaintiff compensatory and punitive damages in an amount to be determined by the jury.

5.     Plaintiff prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

**Plaintiff Demands a Trial by Struck Jury on All Issues Triable by a Jury.**

Respectfully submitted,

 /s/ Jon C. Goldfarb
Jon C. Goldfarb (asb-5401-F58J)
L. William Smith (asb-8660-A61S)
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

**DEFENDANTS' ADDRESS:**
Koch Foods, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Alex Huddleston
7903 Old Highway 431
Newell, AL 36280